# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

JENNIFER ROSE GOLDEN, )
        Plaintiff, )
)
v. ) Case No. CIV-16-1335-BMJ
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security )
Administration, )
)
        Defendant.[1] )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jennifer Rose Golden, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's final decision finding she was not disabled under the Social Security Act. The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Social Security Administrative Record (AR), and both parties have briefed their respective positions. For the reasons stated below, the Court affirms the Commissioner's decision.

### I.    Procedural Background

In July 2013, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income. AR 19, 159-162, 163-168. The Social Security Administration (SSA) denied the applications initially and on reconsideration. AR 49-50; 66-67. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Nancy A. Berryhill, Acting Commissioner of Social Security Administration, as the proper Defendant in this action.

June 17, 2015. AR 19-26. The Appeals Council denied Plaintiff's request for review on September 21, 2016. AR 1-5. Therefore, the ALJ's decision constitutes the final decision of the Commissioner. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review. *See* Compl. [Doc. No. 1] (filed November 21, 2016).

**II.     The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining process); *see also* 20 C.F.R. §§ 404.1520, 416.920. The ALJ first determined Plaintiff meets the insured status requirements of the Act through December 31, 2018, and has not engaged in substantial gainful activity since June 4, 2013. AR 21.

At step two, the ALJ determined Plaintiff has the following severe impairments: diabetes and chronic back pain. *Id*. The ALJ determined two additional medically determinable impairments, celiac disease and Graves' disease, are not severe impairments. AR 22. At step three, the ALJ found that the functional limitations resulting from Plaintiff's impairments, considered alone or in combination, do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id*.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the following: she remains able to stoop, crouch, and kneel.

*Id.*

At step four, the ALJ relied on the testimony of the vocational expert (VE), and determined Plaintiff could perform at least some of her past relevant work:

2

> The claimant is capable of performing past relevant work as a library clerk (D.O.T. # 249.367-046), record sales clerk (D.O.T. # 277.357-046), and contract clerk (D.O.T. # 209.387-018). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

AR 25. Thus, at the fourth step of the sequential evaluation, the ALJ determined Plaintiff was not disabled.

### III. <u>Issues Presented for Judicial Review</u>

Plaintiff submits two assignments of error. First, she contends the ALJ erred in formulating her RFC. Plaintiff also asserts the ALJ erred at step four of the sequential evaluation process by failing to specify the requirements of her past relevant work. Pl.'s Br. [Doc. No. 17], 4.

### IV. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted).

A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence

or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

Plaintiff bears the burden of proof at steps one through four of the sequential evaluation process to establish a prima facie case of disability. *Wells v. Colvin*, 727 F.3d 1061, 1064 n. 1 (10th Cir. 2013). If Plaintiff meets this burden, the burden of proof shifts to the Commissioner at step five to show that Plaintiff retains a sufficient RFC to perform other work that exists in significant numbers in the national economy. *Id.*

V. **Analysis**

A. **The ALJ's RFC Determination**

Plaintiff contends the ALJ's RFC determination is erroneous because he failed to consider the limiting effects of her non-severe impairments, celiac disease and Graves' disease, in combination with the effects of her severe impairments, diabetes and chronic back pain. But as discussed in further detail below, the record does not support a conclusion that either of these medically determinable, but non-severe conditions resulted in functional limitations over and above those caused by her severe impairments.

Plaintiff was diagnosed with Graves' disease[2] in November 2013. AR 405; 423. She testified that the resulting hyperthyroidism caused her to have a high heartrate. AR 41. Plaintiff testified that when her heartrate was high, she would have difficulty breathing and would have to lie down until her heartrate slowed. According to Plaintiff, these episodes happened at least once, and sometimes twice every day. AR 42.

---

[2] "Graves' disease," also known as thyrotoxicosis, is the most common cause of hyperthyroidism in the United States. Symptoms include rapid and irregular heartbeat, irritability, fatigue, trouble sleeping, weight loss, and heat intolerance, among others.
*See* https://www.niddk.nih.gov/health-information/endocrine-diseases/graves-disease (last visited August 11, 2017).

4

It is likely Plaintiff did have the symptoms about which she testified at the time she was diagnosed with Graves' disease. But Plaintiff was successfully treated. She underwent thyroid ablation on February 27, 2014. AR 410-411. Then, because her thyroid gland no longer functioned, she developed hypothyroidism, causing weight gain, puffiness, fatigue, cold intolerance and constipation. AR 419. On August 15, 2014, however, she was prescribed medication for this condition. AR 420. At a November 2014, follow-up examination, Plaintiff's pulse was 84 beats per minute, and she reported no heart palpations or other adverse effects from Graves' disease. AR 431-432. The medical records support a conclusion that Plaintiff's symptoms from Graves' disease subsided after her medication was adjusted following the thyroid ablation. Thus, the ALJ had no additional functional limitations to consider from Graves' disease.

Plaintiff testified that when she was diagnosed with celiac disease, the resulting extreme stomach pain affected her ability to focus. AR 42-43. Her hearing testimony suggested she was still experiencing these symptoms. *Id.* But the medical records do not substantiate her testimony. Rather, they indicate she was prescribed a gluten-free diet, and her symptoms were alleviated by maintaining the diet. AR 405. The medical records do not contain notes of any other special treatment for celiac disease other than a prescription for an iron supplement. AR 434. Moreover, Plaintiff did not report abdominal or stomach pain to the consultative examiner in 2013. AR 365-372. Thus, the ALJ had no reason to consider the symptoms of celiac disease Plaintiff experienced when she was first diagnosed with the condition.

The ALJ's RFC determination is supported by the medical evidence. The record does not support the existence of any functional limitations attributable to Plaintiff's non-severe impairments that should have been considered in combination with the functional limitations from her severe impairments.

5

B.     The ALJ's Step Four Analysis

Plaintiff contends the ALJ erred in his analysis at the fourth step of the sequential evaluation, resulting in an incorrect conclusion that Plaintiff could perform at least some of her past relevant work.

> Step four of the sequential analysis . . . is comprised of three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), *see* SSR 86–8, Soc. Sec. Rep. Serv., Rulings 1983–1991, 423, 427 (West 1992), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(e). In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See* SSR 82–62, Soc. Sec. Rep. Serv., Rulings 1975–1982, 809; *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993). At each of these phases, the ALJ must make specific findings. *See Henrie*, 13 F.3d at 361.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

As discussed above, the ALJ precisely stated Plaintiff's RFC, and that finding is supported by substantial evidence in the record. Plaintiff contends, however, that the ALJ's step four analysis is also defective because, at the second phase of step four, the ALJ did not make specific findings regarding the requirements of Plaintiff's past relevant work. Pl.'s Br. [Doc. No. 17], 9-15. Citing *Winfrey*, 92 F.3d at 1023, 1025, Plaintiff contends the ALJ in this case made findings only about her limitations and "the remainder of the step four assessment [took] place in the VE's head" leaving nothing for the court to review. *Id.*

> At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work. *See Henrie*,[3] 13 F.3d at 361. To make the necessary findings, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." SSR 82–62, Soc. Sec. Rep. Serv., Rulings 1975–1982, at 812.

---

[3] *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

*Winfrey* at 1024.

In *Winfrey*, the ALJ "made no inquiry into, or any findings specifying, the mental demands of plaintiff's past relevant work, either as plaintiff actually performed the work or as it is customarily performed in the national economy." *Winfrey* at 1024. The Tenth Circuit was especially concerned about functional impairments caused by the claimant's *mental* impairment and emphasized that in such cases,

> care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's *mental impairment* is compatible with the performance of such work.

*Id.* (*citing* SSR 82-62, Soc. Sec. Rep. Serv., Rulings 1975-1982 at 812) (emphasis added). Because the ALJ had not considered the mental requirements of the claimant's past relevant work, the ALJ's phase two finding that the claimant could perform past relevant work was not amenable to meaningful review by an appellate court.

In this case, however, Plaintiff has no mental impairments, and the ALJ's questions to the VE elicited a thorough description of the physical job demands of Plaintiff's past relevant work. AR 45. The ALJ relied on the VE's testimony to identify Plaintiff's past relevant work by title and listing number from the Dictionary of Occupational Titles (DOT). AR 25.

The ALJ also noted with approval that the VE had identified the exertional classifications and the specific vocational preparation (SVP) assigned to each job by the DOT. In her testimony, the VE identified five jobs comprising Plaintiff's past relevant work: library clerk, classified as light work with an SVP of 5; record sale clerk, classified as light work with an SVP of 3; contact clerk, classified as sedentary work with an SVP of 4; loan clerk, classified as sedentary work with and SVP of 4; and rental clerk, classified as medium work with an SVP of 4. AR 45.

The ALJ's first hypothetical question to the VE accurately represented the vocational characteristics of Plaintiff and her RFC. AR 46. As Plaintiff was limited to light work, there was only one job among those representing her past relevant work that she could not perform—that of rental clerk. *Id.* Where an ALJ "quote[s] the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis," there is nothing improper because [a]n 'ALJ may rely on information supplied by the VE at step four.'" *Doyal*, 331 F.3d at 761 (*quoting Winfrey* at 1025).

In sum, *Winfrey*, unlike the case before this Court, was focused on the ALJ's consideration of the claimant's *mental* impairments. In this case, the only relevant job-related requirement was the strength classification for each job. The ALJ secured this information through the testimony of the VE. Thus, the ALJ's step four analysis is adequate and does not require reversal. *See Best-Willie v. Colvin*, 514 Fed. App'x 728, 738 (10th Cir. 2013) (where VE testified as to strength classification and SVP of past relevant work, ALJ properly relied on VE's testimony at phases two and three of step four).

**VI.   Conclusion**

The Court concludes that the ALJ did not err in assessing Plaintiff's RFC or in determining at the second phase of step four that Plaintiff was capable of performing most of the jobs constituting her past relevant work.

The decision of the Commissioner, embodied in the decision of the ALJ, is AFFIRMED.

ENTERED this 11th day of August, 2017.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE

8